IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BREAC A. STEWART,<br><br>　　　　　　　　　Defendant. | 8:14CR288<br><br>PRELIMINARY ORDER OF FORFEITURE |

This matter is before the court on the government's motion for a preliminary order of forfeiture, Filing No. 96, and on the parties' responses to the court's order to submit written closing argument on the forfeiture allegation. *See* Filing Nos. 96 and 97.

The defendant was charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(C) (Count I) (hereinafter, the drug conspiracy), conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (ii) (Count II) (hereinafter, the money laundering conspiracy), and travel in interstate commerce with the intent to distribute proceeds of an unlawful activity, in violation of 18 U.S.C. § 1952(a)(1) (hereinafter, the racketeering enterprise). Filing No. 46, Superseding Indictment. The Superseding Indictment contained a forfeiture allegation, specific to each count, that notified defendant Stewart that upon conviction, he and co-defendant Hans Schroeder "shall forfeit" certain property, specifically a money judgment for *at least* $100,000.00 (emphasis added).[1]   Filing No.

---

[1] Codefendant Schroeder entered into a plea agreement in which he agreed to the entry of a money judgment against him in the amount of $100,000.00, and agreed that such sum represented proceeds from the marijuana conspiracy alleged in Count I and/or was property used in to commit or

46, Superseding Indictment at 4. The government sought forfeiture under 21 U.S.C. § 853 with respect to the drug conspiracy; under 18 U.S.C. § 982(a)(1) with respect to the money laundering conspiracy; and under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 with respect to the interstate travel or transportation in aid of a racketeering enterprise charge. *Id.*

Defendant was tried to a jury from June 1, 2015, to June 8, 2015. He was convicted on all three counts. The defendant did not request a jury determination of the forfeiture issue and the matter was submitted to the court.[2]

The government now seeks a forfeiture money judgment. It seeks a single money judgment against defendant Stewart based on three independent legal theories. As to Count I, the government seeks forfeiture of at least $494,500.00 and up to $1,086,750.00 as property constituting or derived from any proceeds the defendant obtained, directly or indirectly, as a result of the conspiracy to distribute marijuana under 21 U.S.C. § 853. As to Count II, the government seeks forfeiture of at least $227,000.00 as property involved in the money laundering conspiracy under 18 U.S.C. § 982(a)(1). As to Count III, the government seeks forfeiture of at least $529,000.00

---

facilitate the commission of that crime, and/or was property involved in or traceable to the money laundering offense charged in Count II of the Indictment. He also agreed that the government was entitled to the forfeiture substitute assets of the defendant up to the value of the forfeiture money judgment, except the government agreed not to seek forfeiture of defendant Schroeder's Wake-N-Skate business as a substitute asset. Filing No. 70, Plea Agreement.

[2] There is authority that there is no right to a jury trial under Fed. R. Crim. P. 32.2 rule if the government seeks a money judgment instead of seeking to forfeit specific assets. *See United States v. Curbelo*, 726 F.3d 1260, 1277–78 (11th Cir. 2013) (the right to a jury under Rule 32.2(b)(5) applies only to specific property, not to the amount of a money judgment); *United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) (there is no statutory right to a jury under Rule 32.2(b)(5) when the government is seeking only a money judgment). Federal Rule of Criminal Procedure 32.2 directs the district court to ascertain if either party wants the jury retained "to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R. Crim. P. 32.2(b)(5). Rule 32.2(b)(1)(A) makes it clear that "it is the trial court's duty to 'determine the amount of money that the defendant will be ordered to pay' when the Government seeks only 'a personal money judgment.'" *Curbelo*, 726 F.3d at 1277–78.

and up to $1,311,000.00 as proceeds traceable to the racketeering enterprise involving a conspiracy to distribute controlled substances.

The defendant, on the other hand, contends that the only sums subject to forfeiture are the funds that flowed through a bank account and were sent via MoneyGram. He argues that forfeiture of amounts based on the testimony of cooperating witnesses is not supported by sufficient evidence, contending that the credibility of those witnesses is suspect.

I.  FACTS

The charged conspiracies were based on allegations that defendant Stewart supplied marijuana from California to co-defendant Hans Schroeder for re-distribution in Nebraska from December 2011 to December 2013. The evidence establishes that Stewart and co-defendant Schroeder exchanged marijuana and cash by mail and by private courier, through wire transfers, and through deposits and withdrawals into and out of a bank account held in the name of Hans Schroeder doing business as "We Be Lions," ("the WBL account").[3] Schroeder opened the account in 2011 and defendant Stewart was added as a signor on May 7, 2012. *See* Trial Exhibit ("Tr. Ex.") 24. The record shows that Schroeder deposited cash into the WBL account in Nebraska and Stewart made corresponding withdrawals in California.[4] Records also establish that the defendant withdrew about $103,400 from the WBL account and received 29 wire

---

[3] "We Be Lions" was the name of a rock band that defendant Schroeder managed.

[4] A review of the activity on the account reflects that Schroeder made the following deposits: $3,211 during 2011; $96,556 during 2012; and $37,098.48 during 2013. Breac Stewart withdrew $80,900 during 2012 and $22,500 during 2013, for a total withdrawal amount of $103,400. *See* RPSIR at 9.

3

transfers totaling approximately $64,894. See Tr. Exs. 28, and 30; Revised Presentence Investigation Report ("RPSIR") (sealed) at 7.

Several witnesses—Jordyn Hermsen, Christopher Gude, and Patrick Brittan— testified against defendant Stewart pursuant to conditional non-prosecution agreements, and co-defendant Schroeder testified pursuant to both a nonprosecution agreement and later a cooperation agreement that contemplates a sentence reduction for substantial assistance under U.S.S.G. § 5K1.1. Schroeder and others testified that Schroeder was involved in a glassware business in partnership with defendant Stewart. Schroeder testified that, of the approximate $100,000 that went through the WBL bank account to Stewart, only five to ten of the deposits, each approximately $1,200, were the proceeds of marijuana provided by defendant Stewart and sold by defendant Schroeder. He characterized the amount of marijuana proceeds sent to Mr. Stewart through this account as extremely small, limited to "maybe 5-10 deposits of $2,000.00 each." There was also testimony that approximately $40,000.00 to $50,000.00 of marijuana proceeds (repayment of costs and split of profits) was sent by other means from Schroeder to Stewart. See RPSIR at 7-8.

In this case, the government seized eighteen pounds of marijuana and $5,100.00 in U.S. currency from co-defendant Schroeder's safe, and $2,502.25 in U.S. currency from Schroeder's car. RPSIR at 7. Defendant Stewart contends that the informant who was working with the DEA in the initial investigation of Schroeder stated that Schroeder's source of marijuana was from Colorado and the informant never mentioned Stewart as a source of marijuana. Id. Co-defendant Schroeder owns and operates a retail skateboard shop, known as Wake N Skate, located in Omaha, Nebraska. Id. at 8.

Schroeder testified that he obtained ten to twenty pounds of marijuana per month from defendant Stewart during the time frame of the conspiracy. He testified that he generally sold the marijuana and remitted the purchase price per pound to acquire the marijuana, plus one-half of the profit over that purchase price to Stewart. He testified he sent marijuana sale proceeds to defendant Stewart via mail during the course of the conspiracy, except in the summer of 2013 when Stewart was in Omaha. Patrick Brittan and Christopher Gude corroborated Schroeder's use of the mail for these purposes. Schroeder also sent proceeds via MoneyGram, the We Be Lions account at Wells Fargo Bank ("WBL Account") and two couriers. Patrick Brittan provided corroborating testimony as to the MoneyGram wires. He recalled sending one MoneyGram wire at Schroeder's request. Records from MoneyGram reflected that Brittan sent five wires to Defendant during the relevant time frame. *See* Ex. 30.

Schroeder testified that the ratio between marijuana proceeds and glassware proceeds deposited in the WBL account or represented in the MoneyGram transactions was approximately a "60-40 ratio." *See* RPSIR at 6. The parties stipulated that defendant Stewart received the MoneyGram transfers and made the withdrawals from the WBL Account. *See* Filing No. 96, Government motion at 6-7. The MoneyGram records reflect a total of $64,894.00 sent by wire transfers to Defendant, all but one of which occurred during 2012. *See* Ex. 30; RPSIR at 9. The WBL account records reflect a total of $103,400.00 withdrawn by defendant Stewart from May of 2012 (after he became a signatory on the account) until August 2013. *See* Exs. 24 & 28.

Schroeder, Gude, Hermsen, and Patrick Brittan all testified as to the amount and source of marijuana and money involved in this case. Gude testified he made

approximately five trips transporting marijuana and three trips transporting cash during about October 2012 to about March 2013.  The timing and number of these trips was corroborated by Gude's car rental records.  *See* Tr. Ex. 31.  He testified that on the first trip he transported 8-10 pounds, on the next trip about 15 pounds and on ensuing trips he transported at least 20 pounds.  During two later trips, he transported $20,000 each time from Schroeder, plus more from "investors" who expected to receive a share of the load.  *See* RPSIR at 6.

Jordyn Hermsen testified she transported marijuana six to eight times during about April 2013 to November 2013. She did not know how much the marijuana weighed, but she transported from one to four duffle or hockey bags each trip. Schroeder and Gude both testified that such a bag carried at least 20 pounds. Using two bags per trip, this totals approximately 240 pounds over eight months, or 30 pounds per month.  *See* RPSIR at 6.

In an interview connected to the investigation, Brittan stated he sent drug proceeds for Schroeder through Western Union and MoneyGram.  He recalled he sent the money to California, but he could not recall who or where in California he sent the drug proceeds.  In total, Brittan estimated he sent drug proceeds to California for Schroeder approximately three or four times.  The average amount of currency he wired or mailed for Schroeder was between $10,000 and $12,000.  *See* RPSIR at 10-11.

Schroeder testified that the purchase price of the marijuana was $2,000 to $3,000 per pound, and the profit ranged from $300 to $1000 per pound.[5]

---

[5] The government contends that using the low end of all these figures, the portion of the proceeds remitted to defendant Stewart from marijuana sales was at least $494,500.00 (23 months x 10 lbs. per

6

II.  LAW

"Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes."  *Kaley v. United States*, 134 S. Ct. 1090, 1094 (2014) (involving pretrial asset restraint).  "Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises."  *Id.*  (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630 (1989)).  "Forfeiture provisions are powerful weapons in the war on crime."  *Kaley*, 134 S. Ct. at 1094 (also noting "[t]he Government also uses forfeited property to recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training.").  "Accordingly, 'there is a strong governmental interest in obtaining full recovery of all forfeitable assets.'"  *Id.*  (quoting *Caplin & Drysdale*, 491 U.S. at 631).

Under Fed. R. Crim. P. 32.2, "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."  Fed. R. Crim. P. 32.2(a).  That provision, however, does not require "that an itemized list of the property to be forfeited appear in the indictment or information itself."  *Id.*, advisory committee's notes to 2000 amendment.  Rather, the government is required to "give the defendant notice that it will be seeking forfeiture in accordance with the applicable statute."  *Id.*  After the defendant is found guilty of the underlying offense, the court must determine, "as soon as

---

month x $2000 per pound + 23 months x 10 lbs. per month x $150 profit per pound). Using the mid-range of the figures, the portion of the proceeds remitted to Defendant was $1,086,750.00 (23 months x 15 lbs. per month x $2,500 per pound + 23 months x 15).  *See* Filing No. 96, Government Motion at 6.

7

practicable," what property is subject to forfeiture under the applicable statute.  Rule 32.2(b)(1)(A).

The Government has the burden to prove the elements of forfeiture under the relevant statute by a preponderance of the evidence.  *United States v. Bieri*, 21 F.3d 819, 822 (8th Cir.1994) (holding criminal forfeiture proceedings under 21 U.S.C. § 853 are subject to a preponderance of evidence standard); *United States v. Beltramea*, 785 F.3d 287, 290 (8th Cir. 2015) (involving 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, 18 U.S.C. § 982, and 21 U.S.C. § 853).[6]  The "court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Rule 32.2(b)(1)(B).[7]  "The calculation of forfeiture amounts is not an exact science," and the

---

[6] Section 981(a)(1)(C) was amended in the Civil Asset Forfeiture Reform Act (CAFRA) to allow civil forfeiture of the "proceeds" of all crimes that are money laundering "predicate" offenses.  *United States v. Schlesinger*, 396 F. Supp. 2d 267, 277 (E.D.N.Y. 2005) *aff'd*, 514 F.3d 277 (2d Cir. 2008).  Another provision of CAFRA, codified at 28 U.S.C. § 2461(c), allows for criminal forfeiture whenever civil forfeiture is authorized.  *Id.*

Under 28 U.S.C. § 2461(c), notice of a civil or criminal forfeiture may be included in the indictment or information filed against a person charged in a criminal case and "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case . . . ."  *Id.*  Also, the statute states that the procedures outlined in 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture proceeding," except that the subsection of section 853 that a rebuttable presumption of forfeiture on a certain showing applies only to drug trafficking convictions.  *Id.*; *see* 21 U.S.C. § 853(d).

[7] If the forfeiture is contested, the court must conduct a hearing upon either party's request.  Fed. R. Crim. P. 32.2(b)(1)(B).  In its brief, the government states that  "[a]nticipating that Defendant will not stipulate to the government's requested amount for the forfeiture, a hearing will be required, but the Court can conduct that hearing as part of the sentencing . . . ."  Filing No. 96, Government motion at 5.  Although the defendant does not stipulate to the government's amount, the court does not construe the defendant's response to indicate that a hearing is necessary.  The defendant appears to rely on testimony adduced at trial.  Sentencing is presently set for November 20, 2015.  *See* Filing No. 110, second amended order on sentencing schedule.

The Federal Rules provide that "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant . . . ."  Fed. R. Crim. P. Rule 32.2(b)(2).

8

court need only make a "reasonable estimate of the loss" using "general points of reference." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011).

Under Rule 32.2, "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). "A money judgment permits the government to collect on a forfeiture order 'even if the defendant does not have sufficient funds to cover the forfeiture at the time of conviction.'" *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006) (quoting *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006). "*In personam* forfeiture judgments are appropriate under 21 U.S.C. § 853, even where the amount of the judgment exceeds the defendant's available assets at the time of conviction." *Vampire Nation*, 451 F.3d at 203; *see United States v. Smith,* 656 F.3d 821, 827 (8th Cir. 2011) (authorizing money judgment on a defendant who has no assets at the time of sentencing).

Circumstantial evidence and estimated quantities may be used as evidence to support a money judgment. *See, e.g., United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (affirming money judgment based on co-conspirator's estimates of drug proceeds collected per week over course of conspiracy, as corroborated by records of expenditures by defendant). As a general principle, extrapolation is an appropriate method by which to calculate a forfeiture money judgment. *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (forfeiture order in food stamp fraud case properly entered in amount equal to loss amount that was calculated based upon extrapolation). When

---

The preliminary order becomes final as to the defendant at sentencing (or sooner if the defendant consents). Fed. R. Crim. P. 32.2(b)(4).

9

calculating a forfeiture order amount based upon extrapolation, the test appears to be whether the calculation is reasonable under the circumstances and supported by a preponderance of the evidence. *Id.* at 181 (finding it reasonable for the district court to discount the false assumption that every transaction over $50.00 was fraudulent and to estimate that only 60% of those transactions were actually fraudulent); *United States v. Bryant*, 128 F.3d 74, 76 (2d Cir. 1997) (affirming district court's calculation based on extrapolation).

Forfeiture is subject to the Eighth Amendment's Excessive Fines Clause and the principle of proportionality: "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). "A forfeiture order is considered unconstitutional 'if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Droganes*, 728 F.3d 580, 591 (6th Cir. 2013) (quoting *Bajakajian*, 524 U.S. at 334).

To be entitled to a money judgment in a drug trafficking case under 21 U.S.C. § 853, the government must prove, by a preponderance of evidence, either: (1) that the money constituted or was derived from any proceeds the defendant obtained, directly or indirectly, as a result of a drug trafficking offense, or (2) that the money was used or was intended to be used, in any manner or part, to commit or to facilitate the commission of the drug trafficking offense. *Bieri*, 21 F.3d at 822. A court must liberally construe the statute's forfeiture provisions to effectuate its remedial purposes. *See Smith*, 656 F.3d at 827; 21 U.S.C. § 853(o). Money that "facilitates" the commission of a drug violation includes money that makes the commission of the violation easier or is used to assist in the commission of the violation. *United States v. Premises Known as*

*3639—2nd St., N.E.*, 869 F.2d 1093, 1096 (8th Cir. 1989) (noting that the term "facilitate," as used in the context of the forfeiture statute is interpreted as encompassing activity making the prohibited conduct less difficult or 'more or less free from obstruction or hindrance'") (quoting *United States v. One 1977 Mark V Coupe*, 643 F.2d 154, 157 (3d Cir. 1980)).

Under 18 U.S.C. § 982(a)(1) (criminal forfeiture), a court is required to impose forfeiture on a defendant convicted of a money laundering offense of "any property, real or personal, *involved in* such offense, or any property *traceable to* such property." 18 U.S.C. § 982(a)(1) (emphasis added); *United States v. Huber*, 404 F.3d 1047, 1056-58 (8th Cir. 2005). A conviction for conspiracy to commit money laundering enables the government to proceed "under a much broader forfeiture provision" than the civil forfeiture provision in § 981(a)(1)(C), which authorizes forfeiture of property that "constitutes or is derived from proceeds traceable to" a qualifying criminal violation. *Kaley*, 134 S. Ct. at 1106 (Roberts, J., dissenting). "Forfeiture under section 982(a)(1) in a money-laundering case allows the government to obtain a money judgment representing the value of all property 'involved in' the offense, including 'the money or other property being laundered (the corpus),' and 'any property used to facilitate the laundering offense.'" *Id.* (quoting *United States v. Hawkey*, 148 F.3d 920, 927 (8th Cir. 1998) (quotation omitted)). The corpus of a money-laundering conspiracy is the money that the defendant conspired to launder. *Huber*, 404 F.3d at 1056.

Facilitating funds can be forfeited even if they were not part of the money-laundering transaction. *Huber,* 404 F.3d at 1061 (explaining that "facilitation under section 982(a)(1)'s 'involved in' clause is geared at the forfeitability of instrumentalities,

11

including funds in some cases, that facilitate (or promote) the money-laundering transactions" and is often "invoked to take computers or other objects used in the money-laundering enterprise") (quoting *Hawkey*, 148 F.3d at 928).  Deposits are "involved in" money laundering if the monies are commingled.  *Id.* (a money judgment for property involved in money laundering offense includes commingled clean money).

Under 18 U.S.C. § 981(a)(1)(C) (civil forfeiture), any property, real or personal, which "constitutes or is derived from proceeds *traceable to a violation of*" various specified offenses, including offenses related to racketeering or dealing in a controlled substance, is subject to forfeiture.  *Beltramea*, 785 F.3d at 290 (emphasis in original). "Proceeds" are "property of any kind obtained, directly or indirectly, as the result of the commission of the offense giving rise to forfeiture and any property traceable thereto . . . ."  18 U.S.C. § 981(a)(1)(G)(2).  The phrase "traceable to" means that the property must have "some nexus to the property 'involved in' the [specified] offense."  *United States v. Voigt*, 89 F.3d 1050, 1087 (3d Cir. 1996).  "[P]roperty traceable" means "property where the acquisition is attributable to the [illegal] scheme rather than from the money obtained from untainted sources."  *United States v. Armstrong*, No. 05-130, 2007 WL 809508, *3 (E.D. La. Mar. 14, 2007) (noting contrast to "property involved in" a money laundering offense under § 982).

Defendants in the same case may be ordered to forfeit different amounts of money based on their roles in the offense and whether they chose to cooperate with the government.  See *United States v. Lyons*, 740 F.3d 702, 733 (1st Cir. 2014) (affirming higher forfeiture judgments with respect to defendants who played a larger role in a RICO conspiracy than others and did not cooperate with prosecutors).  Ordinarily,

forfeiture judgments against both two or more defendants should be joint and several. *See, e.g.,* United States v. Roberts, 660 F.3d 149, 165 (2nd Cir. 2011) (joint and several liability for amount of money judgment in drug case); United States v. Spano, 421 F.3d 599, 603 (7th Cir. 2005) (all co-conspirators jointly and severally liable for forfeiture of fraud proceeds, regardless of how much or how little they benefitted from the conspiracy); United States v. Van Nguyen, 602 F.3d 886, 904 (8th Cir. 2010) (imposing joint and several liability with respect to forfeiture of proceeds of a drug conspiracy); United States v. Simmons, 154 F.3d 765, 770 (8th Cir. 1998) (defendant jointly and severally liable for laundered funds obtained by other members of a RICO conspiracy to the extent that they were reasonably foreseeable to the defendant).

III. DISCUSSION

In view of the jury's finding that the defendant is guilty of violations of the Controlled Substances Act, the federal money laundering statute, and the federal racketeering statute, three distinct statutes provide authority for forfeiture of property in this case: (1) 21 U.S.C. § 853(a), regarding forfeiture based on violations of federal drug laws; (2) 18 U.S.C. § 982(a)(1), regarding criminal forfeiture based on violations of federal money laundering laws; and (3) 18 U.S.C. § 981(a)(1)(C), regarding forfeiture of property connected to racketeering enterprises.

The court first finds that sufficient evidence supports the finding that Stewart participated in a conspiracy to distribute marijuana and some sum of money is subject to forfeiture. The government seeks to carry its burden to establish the amount subject to forfeiture through the testimony of the defendant's co-conspirators on the quantities of

cash and drugs that they transported and sold. It then multiplies that amount by the price the marijuana could have commanded.

The court agrees with the defendant's contention that the testimony of co-conspirators, all of whom were cooperating witnesses who had been granted either non-prosecution agreements or a reduced sentence, is suspect. Although the court credits the testimony that the individuals transported or sold marijuana and/or transported cash, the testimony of those witnesses does not establish the forfeitable amounts with any particularity. The government has not shown that the amounts over and above the funds reflected in Tr. Exs. 28 and 30 (the WBL account and MoneyGram records) "constituted or were derived from" the proceeds of the marijuana conspiracy, nor that they were "property used in any manner or part to commit or facilitate the commission" of the drug crime. Significantly, there was some testimony that codefendant Schroeder also distributed marijuana supplied to him from an individual in Colorado. There was no evidence on which to quantify those amounts. Evidence also established that some funds were attributable to the defendants' glass business.

Although it can be appropriate for a court to find the government has sustained its burden by proving the quantity of drugs distributed by the conspiracy and then multiplying that quantity by the price it could have commanded, the testimony of the cooperating witnesses herein does not provide a reasonable estimate of the quantity involved in the conspiracy. Other than the $168,294.00 reflected in the bank and MoneyGram records, such quantities were largely uncorroborated, except by the

testimony of other cooperating witnesses, which itself was suspect.[8] Jordyn Hermsen's testimony as to amounts was particularly vague. She testified she did not know the weight of marijuana or the quantity of cash she transported. The court may make reasonable extrapolations from the evidence presented at trial, but those extrapolations must be drawn from evidence sufficient to establish the amounts by a preponderance of the evidence.

The government contends that it is entitled to forfeiture of $227,000 by reason of the defendant's conviction for money laundering. That sum represents the money deposited in the WBL account and the total transported by couriers. The court finds there is sufficient evidence to establish by a preponderance of evidence that the money deposited in the WBL account, which totals $121,011.80, was "involved in" the money laundering offense and is forfeitable. That the bank account may have contained proceeds attributable to the glass business is of no consequence because property "involved in" a money laundering offense includes commingled funds.

However, the government has not established by a preponderance of the evidence that the couriers transported $106,000.00. As noted above, the court discounts the cooperating witnesses' testimony to some extent. Gude testified that he transported about $13,000 on one trip and at least $20,000 during each of two later trips, totaling $53,000.00. The number and timing of the trips is corroborated by car rental records, but not the amounts. Hermsen could not testify to the amount of money she transported, and the inference that she transported as much as Gude did would be

---

[8] Although Christopher Gude's travel was corroborated by rental car records, those records corroborated only the fact of the travel, not the amounts transported.

15

speculative. The court finds that the government has not produced reliable evidence of the amounts over and above those reflected in the WBL bank account records. Accordingly, the court finds the government is entitled to forfeiture of $121,011.80 as "involved in" the money laundering crime for which defendant Stewart has been convicted.

With respect to the defendant's conviction under Count III, the government argues that it is entitled to forfeiture of the total proceeds and/or profits obtained by both Stewart and Schroeder as funds "traceable to" the racketeering enterprise premised on the drug conspiracy. It argues that it is entitled to an additional $34,500.00 to $224,000.00 on top of the $494,500.00 to $1,086,750.00 that is forfeitable under the defendant's conviction for Count I.

The court finds the government's argument is unavailing. The government has not shown that the amounts that cooperating witnesses testified they sold or transported "constituted or were derived from proceeds traceable" to the racketeering offense. "Property that constitutes, is derived from, or is traceable to" an offense is a narrower forfeiture provision than the provision allowing forfeiture of property "involved in" an offense. Let it suffice to say that the government has not satisfied that stricter standard by a preponderance of evidence with respect to the sums over the $168,294.00 reflected in the bank and MoneyGram records. Accordingly, the court finds that the government is entitled to a forfeiture money judgment in the amount of $168,294.00 under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

In making this finding, the court notes that co-defendant Schroeder agreed in his plea agreement to a money judgment against him in the amount of $100,000.00. He

was allowed, however, to maintain his interest in the Wake-n-Skate store, which was arguably involved in or integral to the conspiracies at issue. Under the circumstances, the court does not find it appropriate for Schroeder's co-defendant to forfeit a sum that is five to over ten times the amount forfeited by Schroeder. This resolution maintains proportionality in consideration of the respective roles and level of cooperation by the defendants.

The court finds defendant Stewart's interest in the following property is forfeitable and a preliminary order of forfeiture should be entered. Accordingly,

IT IS ORDERED:

    1.    The motion of the United States for a preliminary order of forfeiture (Filing No. 96) is granted.

    2.    The court makes the preliminary finding that defendant Breac A. Stewart, shall be liable for a total judgment for restitution in the amount of $168,294.00, joint and several up to the amount of $100,000.00 with defendant Hans Schroeder (*see* Filing No. 70, Hans Schroeder Plea Agreement). That amount includes:

    (a)    a concurrent forfeiture money judgment in the amount of $168,294.00, pursuant to 21 U.S.C. § 853 and Fed. R. Crim. P. 32.2(b)(2),

    (b)    a concurrent forfeiture money judgment in the amount of $121,011.80, pursuant to 18 U.S.C. § 982(a)(1) and Fed. R. Crim. P. 32.2; and

    (c)    a concurrent money judgment in the amount of $168,294.00, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461 and Fed. R. Crim. P. 32.2.

3. The United States shall provide written notice to all third parties who reasonably appear to be potential claimants with respect to any of the properties described above who have standing to contest the forfeiture in an ancillary proceeding, and will publish notice, in conformity with Supplemental Rules G(4)(a)(ii) through (iv) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, of this Preliminary Order of Forfeiture and of the United States' intent to dispose of the properties in such manner as the Attorney General may direct, pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(i), on an official internet government forfeiture site, www.forfeiture.gov, for at least thirty consecutive days.

4. If a third party files a claim or petition asserting an interest in the property to be forfeited, the government shall move for an ancillary proceeding and the court will conduct an ancillary proceeding under Fed. R. Crim. P. 32.2(c) at a later date. *See* 21 U.S.C. § 853(n)(1)-(7).

5. Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A), this preliminary forfeiture order will become final as to defendant Stewart at sentencing, but will remain preliminary as to third parties until any ancillary proceeding under Fed. R. Crim. P. 32.2(c) is concluded.

6. A sentencing hearing is scheduled for November 20, 2015, at 8:30 a.m. in Courtroom No. 3, Roman Hruska Federal Courthouse, 111 S. 18th Plaza Omaha, Nebraska.

7. The Court retains jurisdiction to address any third party claim that may be asserted in these proceedings, to enter any further order necessary for the forfeiture and disposition of such property, and to order any substitute assets forfeited to the United States up to the amount of the forfeiture money judgments.

DATED this 15th day of October, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge